MEMORADUM OF LAW

COVER PAGE

1. Habeas corpus-Ineffective assistance of council-Critical stage" of trial-New rule of law. 03-466 <u>Mason v. Mitchell</u> Ruling (6th Cir., 325 F.3d 732): Suspension from practice of habeas petitioner's trial counsel for month immediately preceding petitioner's trial, coupled with fact that counsel met with petitioner for no more than six minutes over seven month period before trial, constituted complete denial of Six Amendment right to counsel at critical stage as clarified in <u>Bell v Cone</u>, 535 U.S. 685, 71 CrL 255 (2002); <u>such denial of counsel falls under per se prejudice rule of United States v. Cronic, 466 U.S. 648 (1984).</u>, and, therefore, <u>qualifies for habeas relief under 28 U.S.C. § 2255.</u>

2. Critical Stage: Under established caselaw the <u>Six Amendment right to counsel applies in every "critical stage"</u> of a criminal proceeding. In <u>United States v. Wade</u>, 388 U.S. 218 (1967), for example, the <u>U.S. Supreme Court</u> held that the <u>right to counsel attaches</u> at a post-indictment police lineup, noting the likelihood that the important issue of identity may be conclusively determined at that procedure. The <u>Six Amendment guarantees</u> the <u>right to effective assistance of counsel</u> in matters related to a defendant's efforts to obtain a lower sentence, the U.S. <u>Court of Appeals</u> for the <u>Ninth Circuit</u>, (<u>United States v. Leonti</u>, 9th Cir., No. 01-17113, (4/24/03).

3. <u>DeRoo v. Untied States</u>, 223 F.3d 919 (8th Cir. 2000), that a <u>waiver of appellate rights does not prohibit the appeal</u> of an <u>illegal sentence, a sentence</u> in violation of the terms of the plea agreement, or a claim asserting <u>ineffective assistance of councel.</u>

[35]

4. In <u>United States v. Michelsen,</u> 141 F.3d 867 (8th Cir. 1998), it states that the right to appeal an illegal sentence is "implicitly preserved" despite any waiver.

5. <u>Defining 'Illegal Sentence</u>: The majority observed that in prior cases it has <u>defined</u> an "<u>illegal sentence</u>" as one not authorized for the crime of conviction or one that is outside the statutory limits. It also noted that other circuits that have adopted the <u>miscarriage of justice</u> exception include within it <u>sentences based on constitutionally impermissible factors and claims asserting ineffective assistance of counsel.</u>

6. The U.S. Supreme Court's <u>decision</u> in <u>Ruiz,</u> 536 U.S. 622, 71 CrL 383 (2000), undermined <u>Minore</u>, 292 F.3d 1109, 71 CrL 384 (9th Cir.2002), <u>United States v. Ruiz</u>, is distinguishable on the basis of the nature of the evidence at issue. <u>Ruiz</u>, concerned information relating to the fairness of a trial, not to the voluntariness of a plea, the majority said. The information at issue in this case-the government's burden of proof as to the element of <u>drug quanity</u>-"<u>is properly characterized as critical</u> information of which the defendant must always be aware prior to pleading guilty,'" the majority said, quoting <u>Ruiz</u>, Nothing in <u>Ruiz</u>, contradicts <u>United States v. Minore</u>, 292 F.3d 1109, 71 Crl 384 (9th Cir. 2002), teaching that "for the purpose of assessing what a <u>defendant must understand</u> about the nature of the <u>charges against him,</u> we have no trouble concluding that the dramatic impact of drug quanity on sentencing <u>renders</u> that <u>element critical</u>,'" the majority said.

[36]

6(a) The Majority added that the post-Ruiz, validity of Minore, was "implicity recognized" by the Ninth Circuit's denial of rehearing en banc in that case and by the Supreme Court's denial of certiorari, both of which occured after issurance of the decision in Ruiz, Accordingly, the majority reversed a conviction obtained after a plea colloquy in which the defendant was not advised in accordance with Minore.

7. Gerders v. U.S. 425 U.S. 80, 96 ScT. 1330, 47 L.Ed.2d 592 (1976) Defendants attoney failed to hold a private meeting with the defendant during a seven month period of his representation. Also attoney's lack of preparation.

8. Criminal Law § 46.4 - Council - Duties.

In representing a criminal defendant, council owes the client a duty of loyalty, a duty to avoid conflict of interest, a duty to advocate the defendant's cause, a duty to consult with the defendant on important decisions, a duty to keep defendant informed of important developments in the course of the prosecution, and a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process.

9. In Strickland v. Washington, 466 U.S. 668, 104 S.cT. 2052 80 L.Ed. 2d 674 (1984). U.S. v. Cronic, 466 U.S. 648, 104 ScT. 2039 80 L.Ed. 2d. 657,(1984). The pre trial period constitutes a critical period in crimal proceedings because it encompasses council's constitionally in posed duty to investigate the case. U.S. Supreme Court ruled-council totally absent during critical stage of proceeding prejudice must be presumed.

[37]

10. Thus in <u>McMann the court</u> indicated that the accused is entitled to "a <u>reasonably competent attoney</u>," 397 U.S., at 770, 24 L Ed. 2d 763, 90 S Ct. 1441, whose advice is within the range of competence demanded of attoneys in crimal cases." Id., at 771, 25 L Ed. 2d. 763, 90 S. Ct. 1441." In <u>Cuyler v Sullivan</u>, 466 U.S. 335, 64 L. Ed. 2d. 333, 100 S. Ct. 1708 (1980), held that the <u>constitution guarantees an accused</u> "<u>adequate legal assistance</u>." Id., at 344, 64 L. Ed. 2d. 333, 100 S. Ct.1708. And in <u>Engle v. Isaac,</u> 456 U.S. 107, 71 L. Ed. 2d. 783, 102 S. Ct 1558 (1982), the Court referred to the criminal <u>defendant's constitutional gurantee</u> of "a <u>fair trial and a competent attoney</u>." Id., at 134, 71 L. Ed. 783, 102 S. Ct 1558.

10(a)  The substance of the constitution's guarantee of the effective assistance of counsel is illuminated by reference to its underlying purpose. "[T]ruth," <u>Lord Eldon said</u>, "is best discovered by powerful statements on both sides of the question." [13] This dictum describes the unique strength of our crimal justice.

10b. Thus, the adversarial process protected by the <u>Six Amendment requires</u> that the accused have "<u>counsel acting</u> in the role of an <u>advocate</u>." <u>Anders v. California</u>, 386 U.S. 738, 743, 18 L. Ed. 2d. 493, 87 S. Ct. 1396 (1967).[17] The right to the effective assistance of council is thus the right of the accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted-even if defense council may have made demonstrable errors[18] -- the kind of testing envisioned by the

[38]

Sixth Amendment has occured.[19] But if the process loses [466 U.S. 657] its charater as a confrontation between adversaries, the constitutional guarantee is violated.[20]

10(c). "It is not enough to assume that counsel thus precipitated into the case thought there was no defense, and exercised their best judgement in proceeding to trial without preparation. Neither they or the court could say what a prompt and thoroughgoing investigation might disclose as to the facts. No attempt was made to investigate. No opportunity was given to do so was given.... Under the circumstances disclosed, we hold that defendant was not accorded the right of counsel in any substantial sense. To decide otherwise, would simply be ignore actualities." 287 U.S., at 58, 77 L Ed. 158, 53 S Ct 55, 84 ALR 527.

10(d). Chambers v. Maroney, 399 U.S. 42, 59, 26 L. Ed. 2d. 419, 90 S. Ct. 1975 (1970). White v. Ragen, 324 U.S. 760, 764, 89 L. Ed. 1348, 65 S. Ct. 978 (1945) (per curiam); House v Mayo, 324 U.S. 42, 45, 89, L. Ed. 739, 65 S. Ct. 517 (1945) (per curiam); Ex parte Hawk, 321 U.S. 114, 115-116, 88 L. Ed. 572, 64 S Ct. 448 (1944) (per curiam). Ineffectiveness is also presumed when counsel "actiely represented conflicting interest." Morris v Slappy, 461 at 11-12, 75 L. Ed 2d. 610, 103 S. Ct., prejudice is presumed when counsel labors under an actual conflict of interest, despite the fact that the constraints on council in that context are entirely self-imposed. See Cuyler v. Sullivan, 446 U.S. 335, 64 L. Ed. 2d. 333, 100 S. Ct. 1708 (1980)

[39]

11. The U.S. Supreme Court ruled that a defendant must be provided counsel at every step in the proceedings against him. Bell v. Crone, 535 U.S. 685, 122 S. Ct. 1843, 152 L. Ed. 914 (2002). Bell confirms that the critical stages at which counsel must be present, are not limited to formal appearances before a judge.

12. Hanover v. State Wyo #02-277, (2-11-04) 582 NW. 2d. 252 (Min 1998) Evidence Rule 722, Defendant's dimished mental capacity.

13. United States v. Barth, 990 F2d. 422, (8th Cir 1993) This court recognized that the Sentencing Guidelines contain the "terrifying Capacity for Escalation of a defendant's sentence" as a result of the governments misconduct Id. at 424 (quotation omitted). Due to the structure which ties various illicit drugs to a specific sentencing ranges, based primarily upon the sheer weight or quantity of drugs present in a given offense, relatively moderest differences in the amount of drugs seized from or manufactured by a defendant may dramatically alter his or her time in prison, yet at the same time in many Drug Enforcement actions including this one, it is the government and not the defendant which maintains ultimate control over how much of a drug is bought, sold or otherwise swept into the offense. For this reason we held that Sentencing Entrapment may be legally relied upon to depart under the Sentencing Guidelines, Id. at 424-425

13(a). United States v. Barth, 788 F. Supp. 1055, 1057 (D.Minn. 1992). The district court stated it was not at all fortuitous that the agent arrested [Barth] only after he had arranged enough successive buys to reach the magic number, (referring to 50 grams, the quantity that triggers the application of the 10-year mandatory sentence)." Id. In reaching its decision, the district court found the issue before it to be "whether or not the circumstances under which these transactions occured constitute a migrating factor for sentencing purposes," and found that they did. Id. While noting that undercover investigation require "the orchestration of location, timing, and methods of investigation," the district court stated "[investigators] cannot be permitted to orchestrate a defendant's sentence." Id. at 1058

13(b)  Sentencing entrapment has been described by this court as "outrageous official conduct[which] overcomes the will of an individual predisposed only to dealing in small quantities' for the purpose of increasing the amound of drugs...and the resulting sentence of the entrapped defendant." United States v. Rogers, 982 F2d 1293, 1300,-----U.S.---, 111 S.Ct. 1602, 113 L.Ed. 665 (1991). We share with the First Circuit that when a sufficiently egregious case arises, the sentencing court may deal with the situation by excluding the tainted transaction by excluding or departing from the sentencing guidelines.

14. In opinion of the ninth circuit majority observed that under people v. Barraza, 591 P.2d 947, 955 (Cal. 1979), State law makes it impermississible for the police or their agents "to pressure the suspect by overbearing conduct such as badgering, cajoling, importuning or other affirmative acts likely to induce a normally law-abiding person to commit the crime," or to induce a normally lawabiding person "to commit the act because of friendship or sympathy, instead of a desire for personal gain or other typical criminal purpose." Also site Mathews v. United States, the Supreme Court held that "[a]s a general proposition, a defendant is intitled to an instruction as to any recognized defense for which there exits evidence suffucuent for a reasonable jury to find in his favor." United States v. Russell, 411 U.S. 423,, 431-432, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (mentioning outrayes government conduct as a viable claim); see also Hampton v. United States, 425 U.S. 484, 490, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1976) Due process Clause of the Fifth Amendment are implicated when government conduct violates some protected right). Sorrells v. United States, 287 U.S. 435, 442, 53 SCt. 210, 77 L.Ed. 413 (1932)

14(a)  Objective Entrapment.  State v. Blanco, Fla. Dist. CT. App., No. 4D03-113, (1/21/04). Florida's objective entrapment defense focuses on the conduct of law enforcement. When law enforcement has engaged in outrageous conduct that offends decency or a sense of justice in order to manufacture a crime, a conviction violates due process. The remedy for outrageous government conduct is dismissal of the charges. In contrast, the defense of subjective entrapment, which focuses on the accused's predisposition, is

[9]

"a matter for the jury." The court perceived the state's action as exploitation of the defendant's loneliness and egerness to establish a relationship. The defendant initially refused to supply drugs and took steps to end the conversation with the officer before the officer wore him down the court noted. Expanding on an idea expressed in Justice Felix Frankfurter's concuring opinion in Sherman v. United States, 356 U.S. 369 (1958), the court siad.

15. Plain Error" is error which when examined in the context of the entire case, is so obvious and substantial that failure to notice and correct it would affect the fairness, integrity or public reputation of judical proceedings. 475 U.S. 1143, 106 S.Ct 1798, 90 L.Ed.2d 343 (1986). United States v. Guzman. It is a mistake so fundamental that it constitutes a "miscarage of justice." Brunson, 915 F.2d. at 944; Matter of Johnson, 724 F.2d 1138, 1140 (5th circuit 1984). Alternatively stated when a new factual or legal issue is raised for the first time on appeal, plain error occurs where our failure to consider the question results in "manifest injustice." See Self v. Blackburn, 751 F.2d 789, 793 (5th Cir.1985).

15(a) Review for plain error is uniquely addressed to the appellate court's discretion. Question of fact capable of resolution by the district court upon proper objection at sentencing can never constitute plain error. See United States v Mourning, 914 F.2d 699, 703 (5th Cir.1990). For a fact issue to be properly asserted, it must be one arising outside of the district court's power to resolve.

[2̶0̶ 43]

16. <u>United States v. Geer</u>, 923 F.2d 892 (1st Cir 1991), The Pre-Sentence Report prepared by the probation office "is implete with insinurations, accusations,,innuendoes and re-criminations and charges not belonging to...which should not have been considered by the trial judge because of there derogatory and nefarious connotations." Matter remanded so that the district court comply fully with Fed.R.Crim.P.32(c)(3)(D).

17. Courts have insisted in the past on literal compliance with this rule, <u>United States v. Hanono-Surujun</u>, 914 F.2d 15, 18-19 (1st Cir.1990) if for no other reason than because the pre-sentence report is a document that will follow the defendent throughout the term of his sentence and will be heavily relied on by prison officials "in making critical determinations relating to custody or parole." See <u>United States v. Robinson</u>, 883 F.2d 940 (11th Cir.1989) (per curiam). See also <u>United States v. Brown</u>, 887 F.2d 537, 541 (5th Cir.1989); <u>United States v. Campbell</u>, 704 F.Supp. 661, 663-665 E.D. Va.1989). See <u>United States v. Lyon</u>, 898 F.2d 210, 217 (1st Cir.1990).

18. Criminal Law 1166.11: Where government refuses to make counsel available to indigent defendant or where government interferes to restrict effective representation, per se rule applies that conviction be reversed. U.S.C.A.Const. Amend. 6.

19. Relying on <u>Townsend v. Burke</u>, 334 U.S. 736, 68 S.Ct. 1252, 92L.Ed.1690 (1948) and <u>United States v. Bass</u> 535 F.2d 110 (D.C.Cir.1976), appellant's due process claim rests on the assertion that he was sentenced on the basis of false information.

In <u>Townsend</u> "the <u>Supreme Court held</u> that the <u>due process clause</u> <u>was violated</u> when a defendant ... '<u>was sentenced</u> on the <u>basis</u> <u>of assumption concernig his criminal record which were materially untrue</u>.'" See <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333" (1980); see <u>United States v. Barnes</u>, 662 F.2d 777, 781-82 (D.C.Cir1980); <u>United States v. Hurt</u>, 543 F.2d 162 (D.C.Cir.1976). <u>VonMoltke v. Gillies</u>, 332 U.S. 708, 725, 68 S.Ct. 316, 324, 92 L.Ed. 309 (1948), <u>quoted in United States v. Hurt</u>, supra, at 165-66.

20. <u>United States v. Pinkney</u>, 551 F.2d 1241, 1250-51 (D.C. Cir.1976) Failure to confer with a client and to attempt to obtain as much first-hand information from client as possible, is not a "<u>quick Judgement</u>" or a "<u>tactical decision</u>," which a court should be loath to second-guess, but is rather precisely the sort of egregious violation of a clear responsibility to which <u>United States v. Hinton,</u> 631 F.2d 769, 771 (D.C.CIR.1980) (per Bazelon, J.); <u>United States v. Decoster</u>, 624 F.2d at 208.

20(a) <u>The second distubing element is counsel's failure,</u> <u>to make an independent effort to verify the presentence report or fill in its gaps</u>. Competent counsel is generally expected to verify the information contained in the pre-sentence report, see <u>United States v. Pinkney</u>, supra, at 1250, supplement the report when incomplete and challenge it when inaccurate, see id.; <u>United States ex rel. Jackson v. Myers</u>, 374 F.2d 707, 710 (3d Cir. 1967).

[15]

20(b)  Finally counsel's behavior at the sentencing hearing speaks for itself. Counsel's allocution was perfunctory at best and very possibly counterproductive, also at trial counsel lacked complete fidelity to defendant's cause, he seemed to display a serious lack of care and confidence. Most likely "prejudice".

21.  Deliberate Elicitation:  In an opinion by Justice Sandra Day O'Connor, the unanimous court said it has "consistently applied the deliberate-elicitation standard in...Sixth Amendment cases" and that the court has "expressly distinguished this standard from the Fifth Amendment custodial-interrogation standard." In Rhode Island v. Innis, 446 U.S. 291, 300, n. 4 (1980), the court commented that "[t]he definition of 'interrogation' under the fifth and Sixth Amendments, if indeed the term 'interrogation' is even apt in the Sixth Amendment context, are not necessarily interchangeable." In Massiah v. United States, 377 U.S. 201, 206 (1964), the court held that an accused's Sixth Amendment right to counsel is violated "when there [is] used against him at his trial evidence of his own incriminating words, which Federal Agents... deliberately elicited from him after he had been indicted and in the absent of his counsel."

21(a)  Following the defendant's indictment on drug charges, police officers went to the defendant's home to execute an arrest warrant. They informed the defendant that he had bee indicted and that they were there to "discuss" his involvement in a drug distribution conspiracy. The officers mentioned the names of other people referred to in the indictment and the defendant responded that he had used drugs with them. The officers did not advise the

defendant of his right under <u>Mirander v. Arizona</u>, 384 U.S. 436 (1966), or under <u>Patterson v. Illinois</u>, 487 U.S. 285 (1988). Latter, at the jail the defendant made further statements about the distribution of drugs. The Court said there was "no question" that the officers' conduct at the defendant's home met the deliberate elicitation standard. It stressed that the officers told the defendant that they had come to "discuss" his drug activities and associations. Because the ensuing discussion took place after the defendant had been indicted, outside the presence of counsel, and in the absence of any waiver of his Sixth Amendment standards established in <u>Massiah</u> and its progency, the court held. The Sixth Amendment requires suppression of the defendant's post warnings statements as fruits of the previous questioning conducted in violation of the Sixth Amendment deliberate elicitation standard. The proper inquiry for assessing whether law enforcement officers' interaction with an indicted defendant's Sixth Amendment right to counsel is whether they deliberately elicited incriminating information from him, the U.S. Supreme Court made clear Jan 26, 2004.

22. <u>Evidence-Expert</u> Testimony on Meaning of Drug Jargon-Case Agent Testifying as Expert: A DEA agent's reliance on his knowledge of the facts of a case as well as his experience and training as a narcotics officer to interpt the meaning of code words and drug jardon in wiretap evidence should have kept the testimony from being admitted under Fed. R. Evid. 403 and 702, the U.S. Court of Appeals for the Second Circuit said Dec. 27, 2002 (<u>United States v Dukagjini (Griffin), 2d Cir., No. 00-1392(L) 12/27/02</u>)

22(a). Most importantly in this case, the agent's testimony strayed beyond matters for which his training and expeerience provided him with the background required to render his opinion reliable under Rule 702, to opinions based merely on the agent's knowledge of the facts of the case, the court pointed out. For example, the agent's testimony that certain neutral words referred to heroin as opposed to some other controlled substance was based on his knowledge that the speakers were heroin dealers. "When an expert is no longer applying his extensive experience and a reliable methodology, Daubert [v. Merrell Dow Pharmaceuticals Inc., 509 U.S. 579 (1993)] teaches that the testimony should be excluded," the court said. Other portions of the agent's testimony were based on statements by fact witness and co-conspirators and this testimony may have improperly suggested to the jury that this law enforcement specialist believed the government's fact witness to be credible, the courts added. Along the way, the court said that the more liberal discovery provided by Fed. R. Crim. P. 16 with regard to expert witness should provide and incentive for prosecutors not to have law enforcement officers who are fact witness testify as experts.

23. Discovery: Under Brady v. Maryland, 373 U.S. 83 (1963) The prosecutor violated a habeas corpus petitioner's due process rights by failing to disclose exculpatory evidence relating to the testimony of a prosecution witness at the penalty phase of the petitioner's trial. The Fifth Circuit U.S. Court of Appeals held that the pertitioner's claim that the state failed to reveal that the witness was in fact an informer was not faily presented to the state court as required by habeas exhaustion rules. Materiality

[48]

standards from Giglio v. United States, 405 U.S. 150 (1972), that applies to prosecutor's knowing presentation of false testimony. Fed. R. P. 15(b) may be applied when issues are tried in evidentiary habeus corpus hearings. The rule allows issues not raised in the pleadings, but which are "tried" by either express or implied consent of the parties, to be treated as if they had been raised by implied consent during a habeus evidentiary hearing is "tried" under the rule.

24. Double Jeopardy: The Double Jeopardy Clause states that no person shall "be subject for the same offence to be twice put in jeoparty of life or limb." U.S. Const. amend. V.. The prophylaxis of the Clause is threefold; it protects a defendant against (i) a second prosecution for the same offense, following an acquittal; (ii) a second prosecution for the same offense, following a conviction; and (iii) multiple punishments for the same offense. N. Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); United States v. Ortiz-Alarcon, 917 F.2d 651, 653 (1st Cir.1990).

24(a) The Rule, required by the Double Jeopardy Clause, is that when one count in an indictment is a lesser included offense of another, duplicative convictions cannot stand. United States v. Houlihan, 92 F.3d 1271, 1300 (1st Cir.1996); United States v. Parrilla-Tirado, 22 F.3d 368, 372 (1st Cir. 1994); United States v. Fenton, 367 F.3d 14 (1st Cir. 2004), found that because the jury had to find that the conduct occured at all before it could find that it occured at or near a school zone, the first six counts are lesser included offenses of the second six. See United States v.

Palmer, 248 F.3d 569, 570 (7th Cir.2001) (per curiam).

25. Entrapment, sufficient evidence even if defendant denies one or more elements of crime. Mathews v. United States, 485 U.S. 58, 99 L.Ed.2d 54, 108 S.Ct. 883 [no. 86-6109](2/24/88) certiorari granted.) The question of validity of an accused's entrapment defense is generally one for the jury.

26. Michigan v Jackson (1986) 475 U.S. 625, 89 L.Ed.2d 631, 106 S.Ct. 1404, holding that confession obtained at police interrogation after defendant had requested counsel at arraignment but before they were able to consult with them were inadmissible as in violation of right to counsel under Sixth Amendment. United States v. Goveia, 81 L.Ed.2d 146, Sup. (Nov 2003)

27. United States v. Woods, 364 F.3d 1000 (8th Cir 2004) On motion doe reconsideration, the Court of Appeals held that remand was required to permit district court to determine if defendant was entitled to downward departure on basis of diminished capacity, after government abandoned its original argument against departure. (vacated and remanded, Opinion, 359 F.3d 1061, vacated in part (4/26/04).

28. 18 U.S.C. 851(a)(1) provides: (a) Information filed by United States Attorney. (1) No person who stands convicted of an offense under this part shall be sentenced to increased punishment by reason of one or more prior convictions, unless before trial, or before entry of a plea of guilty, the United States Attoney files an information with the court (and serves a copy of such information on the person or counsel for the person) stating in

[50]

writing the previous conviction to be relied upon. Upon a showing by the United States Attoney that facts regarding prior convictions could not with due diligence be obtained prior to trial or before entry of a plea of guilty, the court may postpone the trial or the taking of the plea of guilty for a reasonable period for the purpose of obtaining such facts. Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence. In contrast, if an error is deemed to be nonclerical, the government must show that the defendant was not misled to his prejudice as to the identity of the prior conviction. See Harris v. United States, 149 F.3d 1304 (11th Cir1998) (district court lacks jurisdiction to enhance sentence unless government complies with procedural requirements of Section 851(a). 851(a)(1) "is not merely a procedural statute).

29. In United States v. Fanfan No. 03-47-P-H (D. Me. 2004 petition for cert. before judgement granted before judgement, 75 CrL 2093 (U.S. 2004) (No. 04-105). United States v. Booker, 375 F.3d 508, 75 CrL 467 (7th Cir. 2004,) cert. granted, 75 CrL 2093 (U.S. 2004), (No. 04-104) and the courts applied the rule from Apprendi v. New Jersey, 530 U.S. 466, 67 CrL 459 (2000) that any fact, other than a prior conviction, that increases a sentence beyond the "statutory maximum" must be found by a jury beyond a reasonable doubt. The relevent "statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without additional facts.

30. <u>Bivens v. Six Unknown Federal Narcotics Agents</u>, 403 US 388, 29 L Ed.2d 619, 91 S. Ct 1999: 1. <u>Violation of the fourth amendment</u> command against unreasonable searches and seizures, by a <u>Federal Agent acting under</u> the <u>color of Federal authority</u>, gives rise to a Federal cause of action against the the Agent[s] for money damages consequent upon the Agent's unconstitutional Conduct. (Search and Seizure §<u>32</u>).§<u>4</u> operation of Fourth Amendment, acts as a limitation upon the exercise of Federal Power regardless of whether a state in whose jurisdiction that power is exercised would prohibit or penalize the identical act if engaged by a private citizen. §255-Where the <u>Federally protected rights have been invaded</u>, the courts will be alert to adjust their remedies so as to grant the necessary relief. §4, 32- The Fourth Amendment does not serve only as a limitation on Federal defenses to a state-law tort claim against Federal Agents, but is an independent limitation upon the exercise of Federal Power. §2 The essence of <u>Civil Liberty</u> consists in the right of every individual to claim the protection pf the laws whenever her/he received an injury. See <u>Bell v. Hood</u>, 327 US 678, 90 L Ed 939, 66 S. Ct 773, 13 ALR2d 383 (1946), See 28 USC § 1442(a); <u>Willingham v. Morgan</u>, 395 US 402, 23 L. Ed2d. 396, 89 S. Ct 1813 (1969) at 430, 29 L. Ed 2d at 646, Id., at 315-317, 72 L. Ed at 295, 296, 52 ALR 1381. Cf <u>Amos v. United States</u>, 255 US 313, 317, 65 L. Ed 654, 656, 41 S. Ct. 266 (1921); <u>United States v. Classic</u>, 313 US 299, 326, 85 L. Ed 1368, 1383, 61 S. Ct. 1031 (1941)

[52]

31. The U.S. Supreme Court issued its ruling in <u>Apprendi v. New Jersey</u>. The rule set forth in <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 483 (2000) is confined to the facts "that increase the penalty for a crime beyond the prescribed Statutory Maximum. Id 530 U.S. at 490 (emphasis added.

31A. The rule set forth in <u>Blakely v. Washington</u>, 542 U.S.___, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) is confined to defining what the 'Statutory Maximum Penalty' is as prescribed in, <u>Apprendi</u>, <u>supra</u>. The <u>Blakely</u>, Court defined thw 'Statutory Maximum Penalty' as the 'Statutory Base Offense Level.'

31B. In actuality the <u>Blakely</u>, Court only revisited <u>Apprendi</u> to refine the meaning of the Sixth Amendment's jury trial right. Under <u>Apprendi</u>, any fact, other than a prior conviction, that increases a defendant's sentence beyond the applicable [S]tatutory Maximum <u>must</u> be submitted to a jury and proven beyond a reasonable doubt. The central issue in the <u>Blakely</u> case was whether the standard sentencing range (Sentencing Guideline Range) [or] the exceptional sentence is the statutory maximum sentence for <u>Apprendi</u> purposes. The <u>Blakely</u> Court held that any factor that increases the (Sentencing Guideline Range)," like <u>Apprendi</u> <u>must</u> meet the proof beyond a reasonable doubt standard, rather than the previous, by a preponderance of the evendence standard.

[53]