# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

NORMAN L. SMITH          )
          **Petitioner**      )
      **v.**         )     **Civ. No. 04-cv-12246-JLT**
          )     **(Crim. No. 02-10010-JLT)**
UNITED STATES OF AMERICA  )
          **Respondent**    )

## UNITED STATES' OPPOSITION TO PETITIONER'S MOTION PURSUANT TO 28 U.S.C.§2255

The United States respectfully files this opposition to the *Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody* [the § 2255 motion] filed by Petitioner Norman L. Smith ("Smith").  For all of the reasons set forth below, Smith's § 2255 motion is wholly without merit and should be summarily dismissed.  If, however, the Court determines that the factual record must be further developed with respect to any of Smith's claims of ineffective assistance of counsel, the government requests that this Court issue an order:

(1)    Directing Smith to:  (a) confirm that he has waived his attorney-client privilege with respect to the factual issues upon which his ineffectiveness claims are based and (b) supplement his § 2255 motion with his version of every significant conversation or communication he had with counsel pertaining to the claims of ineffectiveness made in his motion, together with any documents he may have which bear on this issue; and

(2)    Upon receipt of such waiver and supplement, order petitioner's trial counsel, Attorney Paul M. Sahady, to file an affidavit under oath responding to Smith's allegations and setting forth pertinent details concerning conversations, correspondence, and/or relevant documentation exchanged with Smith, before or after Smith pled guilty, concerning the allegations Smith has made against Sahady.

A Proposed Order is attached hereto as Exhibit 1.  In support of this response and motion, the Government states as follows:

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On January 10, 2002, a federal grand jury returned a thirteen-count indictment that charged petitioner Norman L. Smith ("Smith"), Loretta M. Costa, David Terceira, and Stephen P. Neto with drug conspiracy, drug distribution, and unlicensed wholesale distribution of prescription drugs. [D. 12].[1]  The indictment arose out of a joint investigation by the DEA and FDA, in which, on ten separate occasions from April 17, 2001 until December 6, 2001, Smith sold oxycodone and/or hydrocodone to an undercover law enforcement officer.[2]  On two of those occasions, Loretta Costa was present when Smith sold the undercover officer the drugs, and on one occasion (July 19, 2001), Costa also sold the officer OxyContin[3] tablets.  Smith was arrested on a federal complaint on December 11, 2001.  About 168 80 mg tablets of OxyContin and 4 tablets of oxycodone/acetaminophen were seized from Smith's vehicle after his arrest.  Smith cooperated and said he had a deal arranged later that night.   David Terceira and Stephen Neto were arrested that night after they delivered a bottle of about 60 80 mg. OxyContin tablets to Smith and an undercover officer.   Smith, Terceira, and Neto all made post-arrest statements admitting their involvement in distributing these drugs.   Terceira said that the December 11, 2001 transaction was his third with Smith and that it was Neto's first.  Costa also made incriminating admissions about distributing OxyContin with Smith following her arrest on state charges.  A total of about 1,118 oxycodone tablets and 238 hydrocodone tablets were purchased or seized during the course of the investigation.

---

[1]Citations to the docket in Crim. No. 02-10010-JLT will be as follows: [D. ___]. Citations to the plea hearing will be to the relevant page of the transcript as [Plea at __ ], to the sentencing hearing as [Sent. at __ ], and to the Presentence Report by relevant paragraph as [PSR ¶ __ ].

[2]The facts are from the agreed Statement of Facts which were part of the plea agreement [D. 82 at ¶2, page 13-14] and recited during the plea hearing [Plea at 8-10].

[3]OxyContin is a brand name for the narcotic oxycodone, a schedule II controlled substance.

2

Smith was not licensed to sell the prescription drug, OxyContin, which is manufactured outside of Massachusetts.

Count One of the indictment charged Smith and his co-defendants with conspiracy to posses with intent to distribute and to distribute oxycodone, a Schedule II controlled substance, and hydrocodone, a Schedule III controlled substance, in violation of 21 U.S.C. § 846.   Smith also was charged with ten substantive distribution counts in violation of 21 U.S.C. 841(a)(1) and conspiracy to engage in the unlicensed wholesale distribution of the prescription drug OxyContin, in violation of 18 U.S.C. §371.

On December 23, 2002, the United States filed an Information to establish Smith's prior convictions. [D. 61].[4]  On July 30, 2003, Smith pled guilty–pursuant to a plea agreement [D.82]-- to all counts with which he was charged.   Prior to sentencing, the government filed a motion for a downward departure pursuant to USSG § 5K1.1 and recommended that Smith be sentenced to 150 months[5].   At sentencing on October 22, 2003, the Court granted the government's motion for a downward departure and sentenced Smith to 120 months' imprisonment to be followed by six years supervised release. [Sent. at 2, 6-8].

On October 19, 2004, Smith filed this §2255 motion.  [D. 96; Civil No.04-cv-12246-JLT

---

[4]Smith was convicted in 1998 in Fall River District Court of  Possession of a Class A Substance with Intent to Distribute or Manufacture, in violation of Massachusetts G.L. 94C § 32. In 1993, Smith was convicted in Fall River District Court of Conspiracy to Violate Drug Laws, in violation of Massachusetts G.L. 94C § 40, and of Possession of a Class A Substance with Intent to Distribute or Manufacture, in violation of Massachusetts G.L. 94C § 32.

[5]Without a departure, Smith's guidelines range calculated by the Probation Office and later adopted, without objection, by the Court was 188 to 235 months' imprisonment.  This range was the result of a Total Offense Level of 31 and a Criminal History Category VI.

D. 1][6].  Smith contends that his sentence is unlawful for ten reasons.  Smith argues that 1) his trial

counsel, Paul M. Sahady, Esq., was ineffective; 2) his sentence was illegally imposed in excess of

the maximum authorized by law; 3) his truck  was illegally searched the night of his arrest;  4) he

failed to receive *Miranda* warnings upon arrest; 5) he suffered Double Jeopardy because the two

conspiracy charges were multiplicitous of each other; 6) he was temporarily insane when he

committed the crimes 7) his plea was involuntary  because he  did not understand the nature of the

charges and was temporarily insane because of drug addiction withdrawal; 8) the prosecution did

not tell the grand jury that he had a legal prescription for the drugs he sold; 9) the § 851 Information

failed to state his prior convictions and there was no proceeding to establish these prior convictions;

and 10) he was entrapped into selling the drugs.

The bulk of his claims are easily defeated as simply factually wrong; the rest are legally

insufficient and/or are not cognizable in a §2255 proceeding.  All of his claims should be summarily

dismissed.

## II.    §2255 STANDARD OF REVIEW

In pertinent part, 28 U.S.C. §2255 provides as follows:

A prisoner in custody under sentence of a court established by Act of Congress
claiming the right to be released upon the ground that the sentence was imposed in
violation of the Constitution or laws of the United States, or that the court was
without jurisdiction to impose such sentence, or that the sentence was in excess of
the maximum authorized by law, or is otherwise subject to collateral attack, may
move the court which imposed the sentence to vacate, set aside or correct the
sentence.

In other words, §2255 "provides for post-conviction relief in four instances, namely, if the

---

[6]Smith filed a second §2255 motion which was docketed on April 22, 2005. [Case No.
05-Civ-10792-JLT.] This motion was virtually identical to the one under consideration here and
was dismissed by the Court on May 23, 2005.

petitioner's sentence (1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962)). The court in David continued, "The catch-all fourth category includes only assignments of error that reveal 'fundamental defect[s]' which, if uncorrected, will 'result[] in a complete miscarriage of justice,' or irregularities that are 'inconsistent with the rudimentary demands of fair procedure.'" 143 F.3d at 46 (quoting Hill, 368 U.S. at 428). In short, the claims under §2255 must "present 'exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.'" Hill, 368 U.S. at 428 (quoting Bowen v. Johnston, 306 U.S. 19, 27 (1939)). See also United States v. Addonizio, 442 U.S. 178, 185 (1979)("unless the claim alleges a lack of jurisdiction or constitutional error, the scope of collateral attack has remained far more limited. The Court has held that an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect which inherently results in a complete miscarriage of justice")(citation omitted). The petitioner bears the burden of establishing the need for relief under §2255 in any of these four instances. David, 134 F.3d at 474. To obtain relief under §2255, a petitioner "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1982).

Moreover, because the need for finality has "'special force with respect to convictions based on guilty pleas,'" a guilty plea may be attacked on collateral review only in "strictly limited" circumstances. Bousley v. United States, 523 U.S. 614, 621 (1998) (quoting United States v. Timmreck, 441 U.S. 780, 784 (1979)). In particular, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be

5

collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984). Thus, when a defendant

files a §2255 motion to challenge the validity of a conviction pursuant to a guilty plea, "the

inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.

If the answer is in the affirmative then the conviction and the plea, as a general rule, foreclose

the collateral attack." United States v. Broce, 488 U.S. 563, 569 (1989). Petitioner Smith has

failed to satisfy this very high threshold required to overturn his guilty plea and obtain relief

under §2255.

      In addition, where the defendant does not present a claim on direct review, he has

committed procedural default and may not be heard on the merits on collateral review unless he

can satisfy one of two narrow exceptions. The first requires the defendant to demonstrate

"cause" for each failure to raise the claim earlier, as well as "actual prejudice" resulting from the

alleged error. See Frady, 456 U.S. at 167-168. The "cause and prejudice" standard requires the

prisoner to show not only that "some objective factor external to the defense" impeded his

efforts to raise the issue earlier, but also that the error he alleges "worked to his *actual* and

substantial disadvantage, infecting his entire trial with error of constitutional dimensions."

Coleman v. Thompson, 501 U.S. 722, 753 (1991)(citations omitted); Frady, 456 U.S. at 170

(emphasis in original). If he cannot show cause and prejudice, the prisoner cannot have his

claim considered unless he can satisfy the second exception by demonstrating "actual

innocence." Bousley, 523 U.S. at 620-623. And, "'actual innocence' means factual innocence,

not mere legal insufficiency." Id. at 623. Petitioner has failed to previously raise the claims he

is presently making under §2255, either before pleading guilty or on direct appeal. Since he has

also failed to demonstrate that he satisfied either the cause and prejudice or actual innocence

exceptions, petitioner is in procedural default and his claims under §2255 should therefore not be heard on the merits.

### III.   ARGUMENT

#### A.    Smith's Counsel Was Not Ineffective

The Sixth Amendment provides  that "in all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense."  U.S. Const. Amend. VI. "It has long been recognized that the right to counsel is the right to the effective assistance of counsel." McMann v. Richardson, 397 U.S. 759, 771, n. 14 (1970) (emphasis added).  The United States Supreme Court, however, has held that "judicial scrutiny of counsel's performance must be highly deferential." Strickland v. Washington, 466 U.S. 668, 689 (1984).  Courts must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id.

The standard employed for determining the merits of ineffective assistance claims is whether the assistance of defense counsel was reasonably competent, *i.e.*, whether the quality of defense counsel's representation was within the range of competence expected of attorneys in criminal cases. United States v. Bosch, 584 F.2d 1113, 1121 (1st Cir. 1978).  Effective representation does not mean errorless representation and "a choice between trial tactics, which appears unwise only in hindsight, does not constitute constitutionally-deficient representation under the reasonably competent assistance standard." Id.; see also United States v. Thomann, 609 F.2d 560, 566 (1st Cir. 1979); United States v. Garcia, 698 F.2d 31, 35 (1st Cir. 1983). Moreover, even deficient representation is legally insignificant unless accompanied by actual prejudice. United States v. McGill, 11 F.3d 223, 226 (1st Cir. 1993) ("petitioner must establish

both constitutionally deficient performance on his attorney's part and concomitant prejudice").

In <u>Strickland</u>, the Supreme Court set forth a two-prong test for a claim of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment. Second, the defendant must show that... counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687. In short, a petitioner must show that 1) counsel's performance was constitutionally deficient and 2) that the deficiency was so great as to have prejudiced the petitioner. A §2255 petitioner must make these showings by a preponderance of the evidence. <u>Lema v. United States</u>, 987 F.2d 48, 51 (1st Cir. 1993); <u>Barrett v. United States</u>, 965 F.2d 1184, 1186 (1st Cir. 1992). Smith cannot meet this standard with respect to any of his claims of ineffective assistance of counsel.

Smith rests his claim for ineffective assistance of counsel on several grounds, all of which fail to satisfy <u>Strickland</u>'s heavy burden of proving constitutional deficiency of counsel and actual prejudice. Smith argues that the performance of his attorney, Paul Sahady, was constitutionally deficient because, he asserts, Sahady failed 1) to obtain the laboratory report on the pills; 2) to obtain the production of grand jury material that would have shown a government witness to have perjured himself; 3) to inform Smith about the existence of a superseding indictment; 4) to object to the sentence imposed on Smith in excess of the authorized term; 5) to adequately investigate all the facts of the case; 6) to raise a direct appeal; 7) to show the tapes and videos of the police operation to Smith; and 8) to move for suppression of evidence. Smith also claims Sahady had a conflict of interest, which prevented him from adequately representing

Smith.  However, these claims are either conclusory and/or demonstrably false, and as such, insufficient to satisfy the high threshold for granting a §2255 motion on the grounds of ineffective assistance of counsel.

As an initial matter,  Smith's claims ring hollow because he has certified in multiple documents that he was satisfied with the quality of the representation provided by Sahady.  On May 7, 2003, the same date that Smith signed his plea agreement, he also signed a document prepared by defense counsel and filed in conjunction with his plea, entitled "Petition to Enter Plea of Guilty FRCrP 11."  It contained various representations that Smith was making as part of his decision to enter a guilty plea.  [D. 84].  The eighth representation states, "I believe that my attorney has done all that anyone could do to counsel and assist me, and that I now understand the proceedings in the case against me." Id.   The plea agreement contained a similar representation in the  "Acknowledgment of the Plea Agreement," in which Smith agreed, among other things, that he had discussed the charges, penalties, and terms of the plea agreement with his attorney and was entering into the plea agreement voluntarily. [D. 82 at page 12].  Smith also acknowledged in this statement, "I am satisfied with the legal representation provided to me by my attorney.  We have had sufficient time to meet and discuss my case." Id.  Smith has himself thus made clear that Sahady provided a satisfactory level of legal representation.  Indeed, courts have relied on a defendant's own statements in evaluating ineffective assistance of counsel claims.  See Ventura v. United States, 382 F.Supp.2d 265, 268 (D.Mass. 2005)(where court, in finding that petitioner had failed to make out a claim under §2255 for inadequate assistance of counsel, held "petitioner's own testimony undermines his claim of ineffective assistance").

As to Smith's specific claims, contrary to Smith's assertion, Sahady was provided with

complete discovery which included copies of all the lab reports and the grand jury testimony of Investigator Richard Sylvia, as specifically detailed in the automatic discovery letter sent to Sahady on March 14, 2002. (A copy of the discovery letters sent to Sahady are attached as Exhibit 2.) Smith also claims that Sahady failed to inform him about the existence of a superseding indictment. In fact, there was no superseding indictment, so Sahady was certainly not deficient for failing to so inform Smith.

Smith also contends that Sahady failed to object to Smith's sentence which, he contends, exceeded the maximum term authorized by law. Again, Smith is simply wrong. First, based on Smith's previous criminal history–he was a Criminal History Category VI--and the crimes for which he was charged, Smith faced up to 30 years' imprisonment on Counts One and Three through Twelve. Count Thirteen carried a maximum prison term of 5 years.[7] At sentencing, the government filed a motion for downward departure for Smith –who was facing a guidelines range of 188 to 235 months–and recommended he be sentenced to 150 months. The Court sentenced Smith to 120 months, well below the 30-year statutory maximum and well below the guidelines range.

Smith also claims that Sahady failed to investigate all the facts of the case, such as his claims that the government was withholding evidence that would have proved entrapment and the illegality of the search warrant. Smith does not actually cite any facts to buttress this claim that Sahady failed to pursue these avenues of investigation, but merely makes conclusory allegations insufficient to satisfy the high threshold required to show ineffective assistance of

---

[7]The maximum penalties were explicitly stated in the plea agreement [D. 82 at ¶2], in the companion Petition to Enter Plea of Guilty executed by Smith on the same date as the plea agreement and filed by counsel [D. 84at ¶4], and explained to Smith during the plea colloquy. [Plea at 3-4]. He stated he understood the maximum penalties. Id. at 4.

counsel in a §2255 motion.  <u>United States  v. McGill</u>, 11 F.3d 223, 225 (1st Cir. 1993) (in

determining whether a defendant has carried the burden of proof on a §2255 motion, "the court

need not give weight to conclusory allegations"); <u>Hoyos-Medina v. United States</u>, 1993 WL

72420 at **3 (1st Cir. 1993) ( a "bald assertion cannot support a reversal for ineffective

assistance of counsel").  <u>Strickland</u> even addressed the situation in which counsel did not pursue

every avenue of investigation, stating, "In any ineffectiveness case, a particular decision not to

investigate must be directly assessed for reasonableness in all the circumstances, applying a

heavy measure of deference to counsel's judgments."  466 U.S. at 691.  Therefore, under

<u>Strickland</u>, even if Sahady chose not to investigate certain avenues of defense (though Smith

provides no evidence of this failure), the Court should give deference to Sahady's judgments

about which facts to further investigate.  Moreover, Smith's certifications that Sahady adequately

represented him and did all that he could to assist Smith, contradict Smith's present claim that

Smith did not do all he could do to adequately represent Smith.

 Smith also asserts that Sahady failed to raise a direct appeal on his behalf.  Smith does

not cite any particular grounds on which Sahady was to raise the appeal, except to say that

Sahady told him "that if my sentence would be more than expected he would filed a Direct

Appeal for me."   Smith's sentence was, in fact, 120 months, less than the 150 months

recommended by the government, and much less than the potential thirty years in jail Smith was

facing.  Therefore, the 120 month sentence is less than might have been expected, so Smith's

claim that Sahady should have appealed on these grounds does not hold water.

 With regard to a counsel's duty generally to appeal on behalf of a client, the Supreme

Court held in <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 471 (2000) that "Counsel has a

constitutionally imposed duty to consult [with the defendant about an appeal] only when there is reason to think either (1) that a rational defendant would want to appeal or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing."  The Court continued:

> In making this determination, courts must take into account all the information counsel knew or should have known. One highly relevant factor will be whether the conviction follows a trial or a guilty plea, because a plea both reduces the scope of potentially appealable issues and may indicate that the defendant seeks an end to judicial proceedings. Even then, a court must consider such factors as whether the defendant received the sentence bargained for and whether the plea expressly reserved or waived some or all appeal rights.

Id.  Therefore, in assessing Smith's claim that Sahady did not appeal as per Smith's wishes, a highly relevant factor is that Smith had already pled guilty, thereby reducing the number of potentially appealable issues and suggesting that Smith wanted to end the judicial proceedings. Additionally, Smith received the downward departure agreed upon in the plea agreement, and at sentencing received an even lower sentence than the government recommended, showing that he "received the sentence bargained for."  Id.  As the court in Ryan v. United States, 97 F.Supp.2d 190, 194 (D.Mass. 2000), stated, in rejecting the defendant's §2255 motion  on the grounds of ineffective assistance of counsel in not bringing an appeal, "A defendant who received the benefit of a bargained for sentence would presumably have little interest in pursuing an appeal." The court in Ryan also noted, "there is nothing on the record to suggest that Petitioner himself reasonably demonstrated an interest in appealing his sentences."  Id. at 196.  So it is here, as nothing in the record reasonably demonstrated that Smith had an interest in appealing his sentences.  Under these circumstances, in which Smith pled guilty, received the bargained for sentence, and provided no evidence of a desire to appeal the sentence, Smith should not be found

to have received ineffective assistance of counsel because Sahady did not file a direct appeal.

Smith also claims that Sahady failed to allow him to view the tapes and videos used in the undercover police operations, which Smith says would have helped prove entrapment.  The recordings were produced to Sahady.  (See Exhibit 2).  Smith  complains that Sahady never showed these audio and video recordings to him, despite the fact that Smith certified in his plea agreement that he had been provided with satisfactory legal representation and had discussed with Sahady possible defenses Smith might have.   Smith offers no evidence to support this conclusory allegation, to which the court therefore "need not give weight." U.S. v. McGill, 11 F.3d at 225.

Even if he had provided any evidence, though, Smith's claim for ineffective assistance of counsel on these grounds would fail because a failure to show Smith the recordings would not result in a constitutional deficiency in the quality of legal representation, and because any failure to show this evidence to Smith would result in no prejudice to him.  See Strickland, 466 U.S. at 687.  If, as Smith conclusorily alleges, Sahady did not show Smith a recording of events to which Smith himself had been a witness and about which Smith already had knowledge, that does not constitute an error "so serious" that counsel's performance was constitutionally deficient.  Id.  Moreover, Smith's claim fails on the second prong of Strickland, as well, for Smith suffers no prejudice from the fact that he allegedly failed to view a recording of himself. In describing the contours of this second prong, the Court stated that the burden is on the defendant to "affirmatively prove prejudice."  Id. at 693.   In short, Smith must affirmatively show that had he seen the recording, he would not have pled guilty and would instead have gone to trial.  Smith offers no evidence to show that he would not have pled guilty.  Smith's

conclusory claim therefore fails both prongs of <u>Strickland</u> and, as such, is insufficient for stating

a claim based on ineffective assistance of counsel.

Smith's next basis for claiming ineffective counsel is that Sahady failed to move to

suppress evidence, which Smith now contends was illegally obtained.  Smith does not specify

what evidence in particular Sahady failed to move to suppress.  It may be presumed from other

sections of his motion that he is referring to pills seized from his truck on the day he was

arrested.  He provides no evidence, though, to support his conclusory allegation that the pills

were illegally seized.  The search of Smith's truck was incident to his arrest, and, moreover,  he

consented to the search.  (A copy of the consent form Smith signed was provided to defense

counsel as reflected in Exhibit 2.)   Sahady thus had received information that the search was

consensual.  Based on this record, it was entirely reasonable for Sahady to not move to suppress

evidence seized from the truck.  As the Court said in <u>Strickland</u>, in discussing whether conduct

was constitutionally deficient, "strategic choices made after thorough investigation of law and

facts relevant to plausible options are virtually unchallengeable; and strategic choices made after

less than complete investigation are reasonable precisely to the extent that reasonable

professional judgments support the limitations on investigation."  <u>Id</u>. at 690-691.  Therefore,

Sahady's strategic decision not to move to suppress the pills seized from the truck which would

likely be unsuccessful given the various legal bases supporting the search should be granted

deference by this Court.

Smith also contends that Sahady was under criminal indictment for a host of serious

crimes at the time he was representing Smith[8].  Smith conclusorily argues that the criminal

indictments resulted in Sahady suffering from a conflict of interest, which prevented him from

adequately representing Smith.  Whether or not Smith was aware that Sahady was under state

criminal charges while Sahady was representing him, Smith does not explain how this created a

conflict of interest in the federal proceeding.  Cuyler v. Sullivan, 446 U.S. 335, 348 (1980) ("In

order to establish a violation of the Sixth Amendment, a defendant who raised no objection at

trial must demonstrate that an actual conflict of interest adversely affected his lawyer's

performance."); see also Strickland, 466 U.S. at 692 ("Prejudice is presumed only if the

defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an

actual conflict of interest adversely affected his lawyer's performance'") (quoting Cuyler, 446

U.S. at 348).  Until filing his §2255 motion, Smith did not raise any objection as to Sahady's

performance or as to any conflict of interest.  On the contrary, Smith signed two different

documents, certifying that he was satisfied with the quality of Smith's legal representations.

Since Smith raised no objection to Sahady's performance, he must therefore demonstrate that

Sahady 1) had an actual conflict of interest, 2) which adversely affected Sahady's performance.

By submitting no evidence to support his conclusory claim that the charges against Sahady

created a conflict of interest, Smith has failed to demonstrate that the charges created "an actual

conflict of interest," or that this conflict "adversely affected his lawyer's performance."  Cuyler,

446 U.S. at 348.

---

[8]According to news accounts, Sahady was charged in September 2002 with various offenses, including kidnapping and assault, in connection with an incident involving a former girlfriend.  The government understands that these charges were ultimately dismissed and that Attorney Sahady advised Smith of them during his representation.

In <u>Dukes v. Warden</u>, 406 U.S. 250 (1972), the Supreme Court denied relief where there was a seemingly more obvious potential conflict of interest than the conflict alleged here.In <u>Dukes</u>, the defendant pleaded guilty to narcotics and larceny charges. He later claimed relief on the grounds that his counsel also had represented his codefendants on unrelated charges, and, in urging leniency for the codefendants, argued that their cooperation with police induced Dukes to plead guilty. The defendant argued that this conflict of interest had infected his plea guilty, such that the plea was involuntary. The Supreme Court disagreed, finding, "There is nothing in the record before us which would indicate that the alleged conflict resulted in ineffective assistance of counsel and did in fact render the plea in question involuntary and unintelligent." <u>Id</u>. at 256 (quoting <u>Dukes v. Warden</u>, 161 Conn. 337, 344, 288 A.2d 58, 62 (Conn. 1971)). Sahady's alleged conflict of interest is much more attenuated than in <u>Dukes</u>, and is presumably based solely on the implication that a lawyer under state criminal charges cannot effectively represent a party in a criminal proceeding. Yet, like the defendant in <u>Dukes</u>, Smith has not provided any evidence which would indicate that Sahady's alleged conflict of interest resulted in ineffective assistance of counsel and rendered his guilty plea involuntary. Therefore, Smith's claim for §2255 on the grounds of ineffective assistance of counsel, due to a conflict of interest, must be denied.

The government submits that Smith has failed to satisfy his burden of demonstrating ineffective assistance of counsel on all his claims, and that therefore, his claims for ineffective assistance of counsel should be dismissed. If, however, the Court determines that additional factual development is necessary, then the government urges the Court to order Smith to supplement his petition by:

a.    ordering him to confirm in writing that he has waived his attorney-client privilege with respect to any issue concerning effective representation by his attorney and to supplement his petition with his version of every significant conversation or communication he had with counsel pertaining to the claims of ineffectiveness made in his motion, together with any documents he may have which bear on the issue (see Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1974) (holding that the attorney-client privilege "is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness"); Greater Newburyport Clamshell Alliance v. Public Service Co., 838 F.2d 13, 19 (1st Cir. 1988) ("[t]he sixth amendment provides a shield for the attorney-client privilege only in criminal proceedings; upon the termination of those proceedings and initiation of a civil action putting the privilege at issue, that *constitutional* protection ends")(emphasis in original)); and

b.    upon receipt of such waiver and supplement, order Attorney Sahady to file an affidavit under oath responding to Smith's allegations and setting forth pertinent details concerning conversations, correspondence and/or relevant documentation exchanged with Smith, before or after his guilty plea, concerning the allegations Smith has made against Sahady.

See , e.g., Batista-Zabala v. United States, 962 F. Supp. 244, 247 (D. Puerto Rico 1997) (ordering §2255 petitioner's former counsel to file statement surrounding decision to forego direct appeal); Zanuccoli v. United States, Civil No. 04-12170-JLT, (D. Mass.) (granting government's motion for order directing trial counsel to file affidavit in response to §2255 petitioner's claim of ineffective assistance of counsel); Tibbs v. United States, Civil No. 02-11265-NG (D.Mass.) (ordering §2255 petitioner to file waiver of attorney-client privilege and affidavit outlining factual bases of claim of ineffectiveness); Vavlitis v. United States, Civil No. 97-10902-EFH (D. Mass.), Memorandum and Order dated September 12, 1997 (dismissing §2255 petition alleging ineffective assistance of counsel for failure to comply with Court's order to waive attorney-client privilege so that record could be expanded to address petitioner's claim). Should Smith fail to respond, his §2255 claim of ineffectiveness should be dismissed.

**B.    Smith's Sentence Did Not Exceed The Statutory Maximum**

As discussed above, Smith claims that his sentence was imposed in excess of the maximum imposed by law and further argues that his sentence was imposed in violation of Apprendi v. New Jersey, 530 U.S. 466 (2000) and Blakely v. Washington, 542 U.S. 296 (2004). As noted above, Smith was charged under 21 U.S.C. § 841(a)(1), among other statutes, and because of his prior drug convictions, faced a statutory maximum term of 30 years' imprisonment.  He was sentenced to 10 years.   Notably,  Smith acknowledged in both the Plea Agreement and in his colloquy with the Court during the Rule 11 Hearing that he could face a possible sentence of 30 years in jail.  [D. 82;  Plea at 4].  Because of Smith's decision to cooperate, accept responsibility for his crimes, and plead guilty, Smith received a downward departure at sentencing.  Instead of the 30 years maximum, he received a sentence of only 10 years in jail, which was 30 months below even the government's recommendation to the court. [Sent. at 4-6].  Clearly, Smith's sentence was not imposed in excess of the amount permitted by law; on the contrary, his sentence was substantially less than it could have been.

In addition, Smith is legally incorrect when he suggests that his prior convictions were required to be submitted to a jury for proof beyond a reasonable doubt. In Almendarez-Torres v. United States, 523 U.S. 224 (1998), the Supreme Court held that prior convictions do not need to be charged in an indictment, admitted by the defendant, or proven to a jury beyond a reasonable doubt.  The First Circuit also has consistently, and repeatedly, rejected the claim that subsequent Supreme Court decisions have cast doubt on the continued validity of Almendarez-Torres.  See, e.g., United States v. Richards, 456 F. 3d 260, 262 (1st Cir. 2006) (rejecting constitutional claim as "hopeless" in light of Almendarez-Torres and noting that Court was bound by Supreme Court precedent "unless and until the Court itself disavows that precedent.")(citing cases); United

States v. Mastera, 435 F.3d 56, 59 n.1 (1st Cir. 2006).   The court in Apprendi held, "Other than

the fact of a prior conviction, any fact that increases the penalty for a crime beyond the

prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable

doubt."  530 U.S. at 490.  This claim, too, should fail.

### C.    Fourth Amendment Claims are not Cognizable Under §2255 and, in any event, the Search of Smith's Truck was Lawful

Smith also contends that the search of his truck the night of his arrest was in

violation of his Fourth Amendment rights.  As an initial matter, and as discussed above, Smith

failed to raise this claim either before his guilty plea or on direct appeal and he is precluded from

raising it here. That is, Fourth Amendment claims should be brought at or before trial, or on

appeal, and are not cognizable under §2255 as long as the defendant had a "full and fair"

opportunity to litigate the claim on direct appeal.  Stone v. Powell, 428 U.S. 465, 481-482

(1976)("We hold, therefore, that where the State has provided an opportunity for full and fair

litigation of a Fourth Amendment claim, the Constitution does not require that a state prisoner be

granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional

search or seizure was introduced at his trial.").  The Supreme Court has applied this principle to

§2255 proceedings as well.  United States v. Johnson, 457 U.S. 537, 563 (1982).  Smith could

have challenged the search in the district court, and did not, and therefore,  his claim that his

Fourth Amendment rights were violated is not cognizable under §2255.

In any event, Smith's claim is also legally meritless.  Smith claims that his right against

illegal search and seizure was violated when the government searched and found pills in his

truck upon his arrest on December 11, 2001, because he claims no search warrant was issued

against him until December 12, 2001, the day after he was arrested.  On the contrary, no search

warrant was necessary because Smith consented to the search of the truck, in which officers

found 168 tablets of OxyContin and 4 tablets of oxycodone/acetaminophen,  [D. 86 at 14], and

because the search also was permissible as incident to his arrest.  Smith's counsel was provided

with the Consent to Search form which Smith signed.  In addition, the search of the Smith's

truck was incident to Smith's arrest.  See New York v. Belton, 453 U.S. 454, 460 (1981) ("we

hold that when a policeman has made a lawful custodial arrest of the occupant of an automobile,

he may as a contemporaneous incident of that arrest, search the passenger compartment of that

automobile").

### D.    Smith Received Miranda Warnings Upon His Arrest

Similarly, Smith's claim that he failed to receive proper *Miranda* warnings upon his

arrest should have been raised at trial or on appeal, and are also not cognizable here.  As

discussed above, Broce limits a §2255 inquiry challenging a conviction pursuant to a guilty plea

to whether the plea was voluntary and counseled.  488 U.S. at 569.  Since an alleged failure to

receive *Miranda* warnings has nothing to do with the issue of voluntariness or with the quality of

Sahady's representation, Broce therefore prevents Smith from complaining under §2255 that he

did not receive Miranda warnings.

Moreover, Smith's Miranda claim is also refuted by the record.  Smith signed two written

Miranda waivers upon his arrest on December 11, 2001.  Copies were provided to counsel, as

reflected in the discovery letters.  This claim, too, should be dismissed.

20

### E.    The Two Charged Conspiracies Did Not Put Smith in Double Jeopardy

Smith also claims that the two conspiracies with which he was charged and to which he pleaded guilty violated Double Jeopardy principles.  Smith contends that "both conspiracies involv[e] the same transaction or acts."    Again, Smith's failure to challenge his indictment should have been raised in the district court or on appeal and may not be addressed for the first time in a §2255 motion.  In any event, the claim is also meritless.   In Blockburger v. United States, 284 U.S. 299 (1932),  the Court held that: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not.  Id. at 304.  See also U.S. v. Shea, 211 F.3d 658, 673 (1st Cir. 2000)(defendant's convictions for being a felon-in-possession and a drug user-in-possession with respect to the same firearms did not violate Double Jeopardy clause because each offense involved an element that the other did not).

Count One charges Smith with conspiring "to posses with intent to distribute and to distribute" oxycodone and hydrocodone in violation of 21 U.S.C. 841(a)(1).  [D. 12].  Count 13, on the other hand, charges Smith with conspiring "to engage in the wholesale distribution in interstate commerce of OxyContin, a prescription drug."  Id.   Count One requires proof that the defendant agreed to possess and distribute controlled substances, that is, oxycodone and hydrocodone.  However,  Count Thirteen deals with a conspiracy to engage in the unlicensed wholesale distribution of the prescription drug OxyContin.  Count Thirteen requires proof that the drug in question is a prescription drug and that the distribution of it was unlicensed, elements unnecessary for proof of Count One.  Since "each provision requires proof of an additional fact

which the other does not," Smith's claim here must also fail.

### G.    Smith Knowingly and Voluntarily Pled Guilty

Smith claims that his plea was unknowing and involuntary because he was not aware of the severity of the charges against him and the maximum sentences to which he was subject. He also contends that he was going through withdrawal from drugs at the time he entered his plea, causing him to be temporarily insane and therefore not able to enter a guilty plea knowingly and voluntarily. Smith did not raise on appeal the argument that his guilty plea was not knowing and voluntary. His claim is therefore procedurally defaulted. See Bousley, 523 U.S. at 621 ("the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review"); Ventura, 382 F.Supp.2d at 266(§2255 claim that plea not knowing and voluntary summarily rejected because not raised on direct appeal).

In addition, the facts of the case and Smith's own sworn testimony belie both of his claims that his guilty plea was not knowing and voluntary. Smith argues that he was unaware of the severity of the charges against him and the possible potential punishment because, he claims, the indictment and plea agreement did not specify the number of pills for which he was being charged nor his maximum possible punishment due to his past criminal history, and because he was not informed at the change of plea hearing of the maximum possible punishment. Smith is correct that the indictment did not specify the exact number of pills that it was alleged he distributed and possessed with intent to distribute, but the indictment itself need not describe in detail the number of pills involved in each sale, as long as it sufficiently spells out all the elements of the alleged offense. See Hamling v. U.S., 418 U.S. 87, 117 (1974)(sufficient that an indictment tracks the statute). Although the indictment did not specifically mention the exact

number of pills, Smith nonetheless had a great deal of notice, before he pleaded guilty, of the severity of the charges against him and the maximum possible punishment.  Smith's plea agreement stated the penalties, [D.82 at ¶2], he signed a companion document  which also stated the penalties [D.84]; and he was advised during the plea colloquy and stated he understood. [Plea at 3].  Similarly, the plea agreement specifically stated the quantity of pills to which the defendant was pleading guilty.

The First Circuit has ruled that the testimony of defendants at a Rule 11 Hearing should be assumed to be accurate, unless the defendant provides some reasonable explanation why it should not be.  United States v. Butt, 731 F.2d 75, 80 (1st Cir. 1984)("the accuracy and truth of an accused's statements at a Rule 11 proceeding in which his guilty plea is accepted are 'conclusively' established by that proceeding unless and until he makes some reasonable allegation why this should not be so"); United States v. Parilla-Tirado, 22 F.3d 368, 373 (1st Cir. 1994)("we will not permit a defendant to turn his back on his own representations to the court merely because it would suit his convenience to do so")(quoting U.S. v. Pellerito, 878 F.2d 1535, 1539 (1st Cir. 1989)). As the plea agreement and Smith's testimony under oath at the Rule 11 hearing clearly show, Smith was well aware of the charges against him and the maximum possible sentences he would be facing before he entered a guilty plea.

Smith also argues that he was temporarily insane both when he signed the plea agreement and entered the guilty plea as he claims to have been going through withdrawal from oxycodone and hydrocodone.  Smith was arrested on December 11, 2001.  He signed the plea agreement on May 7, 2003.  His Rule 11 hearing took place on July 30, 2003.  From the time of his arrest until the Rule 11 Hearing, he was detained.   Smith had thus been incarcerated for 17 months when he

signed the plea agreement, and 19 months when he entered his plea. Smith's claim, therefore, that he was still going through withdrawal from oxycodone and hydrocodone both 17 months and then 19 months after his detention completely lacks merit.

Smith, moreover, admitted both in the plea agreement and at the hearing that he was entering his guilty plea knowingly and voluntarily. The Acknowledgment of Plea Agreement, signed by Smith, states, "I am entering into this Agreement freely, voluntarily, and knowingly because I am guilty of the offenses to which I am pleading guilty." [D. 82 at 12]. Then, at the Rule 11 proceeding, the following exchange took place:

> THE COURT: Have you had anything to eat or drink today that might in any way affect your ability to think normally?
>
> THE DEFENDANT: No, sir
>
> THE COURT: Any medication?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Any pills?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Any liquor? Anything like that?
>
> THE DEFENDANT: No, sir.
>
> THE COURT: Do you feel as though you know what you are doing?
>
> THE DEFENDANT: Yes, sir.
>
> THE COURT: Okay. Take the plea.

[Plea at 7]. Smith was thus given an opportunity to state that his judgment was being affected by drug withdrawal. On the contrary, he testified under oath that no substance was affecting his ability to think normally and that he knew what he was doing. As discussed above, the veracity of those statements under oath at the Rule 11 hearing should be given great weight by the court. Smith's claim that he was temporarily insane, due to drug withdrawal, when he signed the plea agreement and also when he pled guilty at the hearing, is thus completely contradicted by the

record.

### F.     <u>Smith Knowingly and Voluntarily Committed the Crimes</u>

Smith also argues that he was temporarily insane when he sold the drugs, since he was under the influence of oxycodone and hydrocodone during the sale.  Any temporary insanity defense should have been made at trial or on appeal, and does not involve a constitutional error or other fundamental defect causing a miscarriage of justice, necessary to invoke §2255.  <u>Addonizio</u>, 442 U.S. at 185.  As was stated above, the Court in <u>Mabry v. Johnson</u> held, "It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." 467 U.S. at 508.  And <u>Broce</u> has limited consideration of §2255 motions of those who have pled guilty to whether the defendant voluntarily pled guilty and whether the defendant received adequate counsel.  488 U.S. at 569.  Since Smith has admitted under oath that he was entering his plea voluntarily and intelligently and was not under the influence of any substances when making the plea, and has also certified on multiple occasions that he was satisfied with the performance of his counsel, he should now be precluded from asserting otherwise.

### H.     <u>That Smith May Have Had a Legal Prescription for OxyContin is Irrelevant to Whether He Unlawfully Distributed It.</u>

Smith also argues that the government should have informed the grand jury that he had a legal prescription for the drugs he was charged with distributing and possessing with intent to distribute.  Any supposed defense based on the argument that he had a legal prescription to possess the drugs should have been brought at trial or on appeal, and not under §2255, since this claim does not involve a constitutional error nor any fundamental defect causing a miscarriage of

justice. <u>Addonizio</u>, 442 U.S. at 185.  Again, since Smith pled guilty, the inquiry under <u>Broce</u> is limited to whether his guilty plea was voluntary and whether he had adequate counsel.  488 U.S. at 569.  Because the defense of legal prescription is one addressed neither to whether his guilty plea was voluntary nor to the adequacy of counsel, his defense of legal prescription should have been brought up at trial and is not appropriate for consideration on this motion.

Moreover, whether or not Smith did indeed have a legal prescription is utterly irrelevant to the distribution, possession with intent to distribute, and conspiracy charges for which he was charged in the indictment and pled guilty.  Smith was charged in the indictment with and pled guilty to violating 21 U.S.C. § 846, 21 U.S.C. § 841(a)(1), and 18 U.S.C. § 371.  None of these laws contain any element requiring that the defendant not have a legal prescription for the drugs he was illegally selling.

**I.      The §851 Information was Properly Filed and No Proceeding Was Necessary to Establish Them**

Smith contends that the government failed to file an Information with the court, stating his prior convictions, and that the government failed to have the necessary proceeding to establish his prior convictions.  This argument fails on both the facts and the law.      On December 23, 2002, the government filed an Information pursuant to 21 U.S.C. §851 stating the prior convictions which qualified Smith for enhanced punishment upon conviction of the instant offenses.  [D. 61].

Smith also argues that there should have been a hearing to establish these prior convictions.  However, 21 U.S.C. § 851(c)(1) provides, "If the person denies any allegation of the information of prior conviction, or claims that any conviction alleged is invalid, he shall file

a written response to the information.  A copy of the response shall be served upon the United

States attorney.  The court shall hold a hearing to determine any issues raised by the response

which would except the person from increased punishment."  Yet, Smith never filed a written

response challenging the Information.  Since Smith did not file a challenge to the Information, a

hearing was therefore unnecessary.  Smith's claim that his rights were violated for failure to hold

a proceeding on the Information can therefore be dismissed on the law.

### J.    The Police Did Not Entrap Smith Into Selling the Drugs

Finally, Smith argues that his sentence should be vacated or reduced because, he alleges,

the undercover officer entrapped him into selling her drugs.  Smith claims that he was entrapped

by what he says were repeated requests for drugs from the undercover officer, which he said

caused his will to be "overborn.  This final claim again fails on both the facts and on the law.

The entrapment claim should have been brought at trial or on appeal, and is not appropriate for

review under §2255 because the claim does not involve a constitutional error nor a fundamental

defect which will inherently result in a complete miscarriage of justice.  See David, 134 F.3d at

474; Addonizio, 442 U.S. at 185.  Moreover, since Smith has pled guilty, "the inquiry is

ordinarily confined to whether the underlying plea was both counseled and voluntary."  Broce,

488 U.S. at 569.  Since the entrapment defense does not relate to the quality of his counsel, nor

to whether his plea was voluntarily given, Smith may not claim entrapment as a basis of relief

under §2255.

In any event, the claim is meritless.  In Sherman v. United States, 356 U.S. 369, 372

(1958), the Supreme Court, in delineating the difference between entrapment and acceptable

government undercover activity, stated, "the fact that government agents 'merely afforded

opportunities or facilities for the commission of the offense does not' constitute entrapment. Entrapment occurs only when the criminal conduct was 'the product of the creative activity of law-enforcement officials.'"   Indeed, the claim of entrapment is belied by the fact that he sold the undercover officer drugs on ten separate occasions over an eight-month span, and was found with 168 tablets of OxyContin and 4 tablets of oxycodone/acetaminophen in his truck when he was arrested on December 11, 2001, and indeed, had a drug deal arranged for later that night.

### K.    Smith's §2255 Motion is Subject to Summary Dismissal

For all of the reasons discussed above, Smith has not carried his burden of proof in this matter.  Specifically, nothing in Smith's motion and/or supporting memorandum establishes either: (i) constitutional ineffectiveness and concomitant prejudice under Strickland, or (ii) that Smith's conviction involved an unconstitutional, "fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure."  Hill, 368 U.S. at 428; Addonizio, 442 U.S. at 185.  As such, his §2255 Motion should be dismissed without a hearing.

In light of the heavy burden of proof governing §2255 motions, evidentiary hearings are the rare exception, not the rule.  See United States v. Mala, 7 F.3d 1058, 1062 (1st Cir. 1993); United States v. Tardiff, 969 F.2d 1283, 1286 (1st Cir. 1992); United States v. DeCologero, 821 F.2d 39, 44 (1st Cir. 1987).  As stated by the First Circuit, "in most situations, motions can be 'heard' effectively on the papers, with the parties submitting evidentiary proffers by means of affidavits, documentary exhibits, and the like."  McGill, 11 F.3d at 225 (citing Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir. 1988)).  As such, a petitioner seeking an evidentiary hearing must demonstrate a need for special treatment.  McGill, 11 F.3d at 225; United States v.

Panitz, 907 F.2d 1267, 1273-74 (1st Cir. 1990).

Indeed, a hearing is unnecessary "when a §2255 motion is conclusively refuted as to the alleged facts by the files and records of the case." McGill, 11 F.3d at 225; Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974). Alternatively stated, §2255 motions can, and should, be dismissed without a hearing if the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or if the allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. Carey v. United States, 50 F.3d 1097, 1098 (1st Cir. 1995); Murchu v. United States, 926 F.2d 50, 53 (1st Cir. 1991); Shraiar v. United States, 736 F.2d 817, 818 (1st Cir. 1984); see also Rule 4(b), Rules Governing Section 2255 Proceedings. For all of the reasons fully discussed above, such a case exists here. Summary dismissal is therefore appropriate.

## IV.   <u>CONCLUSION</u>

For all of the foregoing reasons, the United States respectfully submits that Petitioner Norman L. Smith's §2255 Motion should be denied and that this matter should be summarily dismissed.  If the Court determines that additional factual development is necessary to evaluate the ineffective assistance of counsel claims, then the government requests the Court to direct the Petitioner to waive his attorney-client privilege and to supplement his petition as specified above and in the attached proposed Order.

DATED:   November 6, 2006

                                    Respectfully submitted,
                                    MICHAEL J. SULLIVAN
                                    United States Attorney

                        By:    <u>/s/Sandra S. Bower</u>
                                    Sandra S. Bower
                                    Assistant U.S. Attorney
                                    U. S. Attorney's Office
                                    John Joseph Moakley
                                    United States Courthouse
                                    1 Courthouse Way, Suite 9200
                                    Boston, MA  02210

<u>Certificate of Service</u>

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

                                    <u>/s/ Sandra S. Bower</u>
                                    SANDRA S. BOWER
                                    Assistant U.S. Attorney